IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PATSY ROUSE,                                          Civil No. 05-3115-CO

        Plaintiff,                          FINDINGS AND RECOMMENDATION

  v.

WAL-MART STORES, INC.,
a corporation,

        Defendant.


COONEY, Magistrate Judge:

      Plaintiff originally filed a complaint in the Circuit Court of the State of

Oregon for Jackson County and Defendant removed to the District Court

based on diversity jurisdiction.  This Court has jurisdiction under 28 U.S.C. §

1332(a)(1).  Plaintiff amended her original complaint on removal and prays

for relief under two contract theories and two tort theories.   She seeks

economic and noneconomic damages.  Defendant moves to dismiss all claims

under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim

upon which relief can be granted (#14).  In support of its motion to dismiss,

Defendant submitted evidence extrinsic to the pleadings as to the contract claims and this Court converted Defendant's Rule 12(b)(6) motion to a Rule 56 motion for summary judgment as to those claims only (#22).[1]  The time for the parties to file additional materials has passed, and neither party has filed further materials in support of, or in opposition to, Defendant's motion.

## I.  **FACTS**

The following paragraphs paraphrase pertinent allegations alleged in Plaintiff's amended complaint:

Plaintiff, a resident of Oregon, worked for Defendant, a foreign corporation, for approximately nine years.

Through her manager and the district manager, Plaintiff agreed with Defendant to temporarily transfer from the Medford store to the Talent store for the duration of her son's training in the Medford store.  The temporary transfer, agreed to prior to November 2003, was to end on her son's reassignment.  On his reassignment, Plaintiff would return to the Medford store.

In July 2003, Defendant fired Plaintiff's husband, Robert Rouse, and

---

[1] In its motion to dismiss, Defendant requested consideration of its extrinsic evidence and treatment of its motion to dismiss as a motion for summary judgment. (Def. Mem. in Supp. of Mot. to Dismiss, at 4 n.1.)

ROUSE v. WAL-MART STORES, INC.
Findings and Recommendation                                     Page 2 of 27

one of his co-workers, Claudia Abbott, for fraternization.  Afterward, Plaintiff's

district manager, Pam Casey, threatened to fire Plaintiff if she discussed the

circumstances surrounding her husband's discharge.  On or about November

2, 2003, Robert Rouse and Claudia Abbott were rehired by Defendant, with

Robert Rouse placed in the Roseburg store.   Despite Plaintiff's objection,

district manager Pam Casey planned to transfer Claudia Abbott to the

Medford store where, on expiration of Plaintiff's temporary transfer, she

would supervise Plaintiff.  Plaintiff appealed Pam Casey's decision and the

home office overturned Pam Casey's decision, and said that Claudia Abbott

would not be placed in the Medford store.

Shortly thereafter, Pam Casey, acting in the course and scope of her

employment, and without Plaintiff's knowledge, arranged to transfer Robert

Rouse and Claudia Abbott to Sacramento, "with both residing in the same

house."  (Am. Compl. at 4 ¶ 11.)  Defendant paid their moving expenses.

The transfer was done to retaliate against Plaintiff for reporting the

fraternization and appealing Claudia Abbott's assignment to the Medford

store.

Defendant's regional office denied Pam Casey's involvement in the

transfer.  Defendant's home office promised to reprimand Pam Casey if she

proved to be instrumental in the transfer.  Plaintiff established Pam Casey's

involvement, but Defendant declined to reprimand.

Defendant would not release Robert Rouse's location during any of

several inquiries by Plaintiff.  Plaintiff located him in February 2004.

Defendant's written, corporate policies include the following:

> A.  An Open Door Policy according to which all associates are
> encouraged to have open discussions concerning all matters
> pertaining to Wal-Mart, including another associate's conduct.
> B.  All issues raised by an associate must be looked into
> promptly, and must be appropriately resolved.
> C.  Any supervisor who retaliates against an associate engages
> in misconduct, and is subject to discipline.
> D.  It is considered a violation of corporate policy to retaliate
> against an associate who refuses to violate corporate policy, or
> who reports a violation.
> E.  Every associate has an obligation to comply with corporate
> policy, and to report violations of corporate policy.
> F.  All complaints are to be investigated thoroughly and
> promptly.

(Am. Compl. at 6 ¶ 17.)

Defendant gave Plaintiff several classes on its policies during the course

of Plaintiff's employment, and she was required to memorize these policies.

Plaintiff quit her job in October 2004, at an hourly wage of $11.68.

In March 2005, Plaintiff secured her first proffered employment,

earning an hourly wage of $9.00.

In addition, the Court makes the following undisputed findings of fact

from the record, construing the facts in the light most favorable to the non-

movant:

Plaintiff signed an "Acknowledgment" on April 26, 2001, which states

in pertinent part:

> This handbook is intended solely as a general information guide
> to let Associates know about the current policies and programs
> Wal-Mart has in place.  The policies and benefits presented in
> this handbook are for your information and do not constitute
> terms or conditions of employment. . . . This handbook is not a
> contract. . . . I acknowledge that I have received and read this
> handbook as well as this Acknowledgment, and that I have had
> the opportunity to ask my Manager questions about both and
> that I fully understand the contents of both as they relate to my
> employment with Wal-Mart.  I understand that the information
> contained in this handbook are guidelines only, and are in no
> way to be interpreted as a contract.

(McGuire Decl. at 1 & Ex. A.)

## II. <u>LEGAL STANDARD</u>

Federal courts require notice pleading.  A pleading must give fair notice

and state all elements of a claim plainly and succinctly, showing the party is

entitled to relief.  Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472,

1478 (9th Cir. 1986), dismissal denied, 487 U.S. 1215 (1988), aff'd, 488 U.S.

347 (1989).  In ruling on a Federal Rules of Civil Procedure 12(b)(6) motion

to dismiss, the court accepts plaintiff's material allegations in the complaint

as true and construes them in the light most favorable to plaintiff.  Abramson

v. Brownstein, 897 F.2d 389, 391 (9th Cir. 1990).  Federal Rules of Civil Procedure 12(b)(6) allows the court to dismiss a complaint on a Defendant's motion to dismiss for failure to state a claim upon which relief can be granted when the pleading lacks sufficient facts to state a legally cognizable claim. SmileCare Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 782 (9th Cir. 1996); Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).  A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff can prove no set of facts in support of a claim.  Abramson, 897 F.2d at 391.

If the district court converts a motion to dismiss under Rule 12(b)(6) to a motion for summary judgment under Rule 56, the moving party is entitled to summary judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact . . . ." Fed. R. Civ. P. 56©); Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632 (9th Cir. 2002).  The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002).

The moving party must carry the initial burden of proof.  Celotex Corp.

v. Catrett, 477 U.S. 317, 322-24 (1986).  The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact.  Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party.  Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995).  All reasonable inferences are drawn in favor of the non-movant.  Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002), cert. denied, 537 U.S. 1106 (2003).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986).  If the moving party presents evidence which, taken by itself, would establish the right to a directed verdict at trial, the motion for summary judgment must be granted, in the absence of any significant probative evidence tending to support the opposing party's theory of the case.  THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290

(1968).  Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial.  Devereaux, 263 F.3d at 1076.

## III. <u>DISCUSSION</u>

Plaintiff's  amended complaint prays for relief under four theories: Defendant breached an employment contract with Plaintiff arising under a bargained for exchange, Defendant breached an employment contract with Plaintiff from which Defendant is estopped denying, Defendant intentionally inflicted emotional distress on Plaintiff, and Defendant invaded Plaintiff's privacy.  As explained below, under Oregon law, Defendant is entitled to summary judgment as to Plaintiff's contract claims and a grant of its motion to dismiss as to Plaintiff's tort claims.

<u>Contract Claims:  Breach of Contract and Estoppel</u>

Defendant contends that Plaintiff's claim for breach of contract must be dismissed because she fails to allege any element of the claim.  Defendant contends that the terms of its corporate policies are too indefinite to constitute an enforceable contract, and its handbook, by its terms, did not

create a contract.  It contends that Plaintiff does not allege a violation of any

corporate policy; and she does not allege damages based on a breach.

Defendant contends that Plaintiff's claim on an estoppel theory fails for the

same reason her breach of contract claim fails:  Defendant never promised

not to engage in the conduct of which Plaintiff complains and Plaintiff did not

reasonably rely to her detriment.  Plaintiff responds that she should probably

file a second amended complaint to more precisely set forth her claims with

regard to her employment contract and estoppel claims.  She contends that

her contract claim is  better alleged as a violation of the covenant of good

faith and fair dealing, especially with regard to Defendant's document

concerning corporate policy.  Plaintiff contends that Defendant is obligated

to exercise good faith and fair dealing in its employment contract with her,

as to all contractual policies and conditions, except termination.  Defendant

replies that Plaintiff's contract claims, both alleged and proposed, fail because

Plaintiff has not, and cannot, allege by what specific corporate policy it failed

to abide, and has not, and cannot, allege any damages based on the breach.

Defendant contends that, under the law cited by Plaintiff, estoppel is not

applicable to at will employment contracts, like Plaintiff's, and her estoppel

claim should be dismissed.  Defendant argues that a claim for breach of the

duty of good faith and fair dealing implied in every contract requires Plaintiff to prove that the breach resulted in damage to her.

The Oregon Supreme Court defined a contract in 1919 as "an agreement between two or more parties competent for that purpose, upon a sufficient consideration, to do or not to do a particular thing which lawfully may be done or omitted." Feenaughty v. Beall, 91 Or. 654, 661 (1919). The parties must manifest agreement on all essential terms in order to form a legally binding contract. Beall v. Foster, 95 Or. 39, 43-44 (1920). The agreement, or mutual assent, is normally demonstrated by an offer and its acceptance. R. J. Taggart, Inc. v. Douglas County, 31 Or. App. 1137, 1140 (1977).

Assuming Plaintiff alleges a contract formed not by explicit agreement at the time of hiring, but rather through a course of performance of the parties' employment agreement, under this theory, "[a] promise may be stated in words either oral or written, or may be inferred wholly or partly from conduct." Restatement (Second) of Contracts § 4 (1979); Staley v. Taylor, 165 Or. App. 256, 262 (2000). Oregon recognizes implied-in-fact contracts that arise by inference from the parties' course of conduct, but "only where the natural and just interpretation of the acts of the parties

ROUSE v. WAL-MART STORES, INC.
Findings and Recommendation

warrants such conclusion."  Owen v. Bradley, 231 Or. 94, 103 (1962); Rohr

v. Baker, 13 Or. 350, 351 (1886).  Actions that may give rise to an implied-in-

fact contract need not be limited to conduct at the outset of a relationship

and may occur over time.  Montez v. Roloff Farms, Inc., 175 Or. App. 532

(2001);  Andal v. City of Salem, 53 Or. App. 159 (1981);  Kamin v. Kuhnau,

232 Or. 139 (1962).  Whether an implied-in-fact contract exists is a question

of fact when a course of conduct between the parties would allow a

reasonable juror to find conduct between the parties sufficient to manifest

assent to a contract.  Staley, 165 Or. App. at 262 n.6 (citing Restatement

(Second) of Contracts § 4 (1979)).

An employer and employee may modify a preexisting employment

agreement by  incorporating language from an employee handbook if the

employee reasonably expects the parties to be bound by the terms of the

handbook.  Gilbert v. Tektronix, Inc., 112 Or. App. 34, 37 (1992); Simpson

v. Western Graphics, 293 Or. 96 (1982).  However, where the employee

cannot reasonably infer the employer's assent to an agreement modification

through its conduct, an employee manual or handbook cannot modify the

employment agreement.  Staley v. Taylor, 165 Or. App. at 262 n.6; accord

Duncan v. Office Depot, 973 F. Supp. 1171, 1177 (D. Or. 1997) (holding that

an employer's prospective and unilateral changes to conditions on its exercise of at-will termination do not subject the employer to contract liability).

As to Plaintiff's first contract claim, Plaintiff alleges mutual assent between Plaintiff and Defendant to a bargained for exchange demonstrated by an offer and its acceptance. (Am. Compl. at 7 ¶¶ 19-21.) Plaintiff further alleges that part of that bargained for exchange included mutual adherence to a set of written corporate policies. (Id. at 7 ¶ 21). She alleges that the written corporate policies included an obligation on Plaintiff's part to comply with the policies and report violations, (Id. at 6 ¶ 17), and that the policies further obliged Defendant to thoroughly and promptly investigate complaints pursuant to the policies, (Id.) Plaintiff alleges Defendant materially breached when Defendant failed to follow the terms of its policies. (Id. at 8 ¶ 23.) She alleges to have suffered money damages that arose from the material breach. (Id. at 9 ¶ 27.) It appears that Plaintiff alleges sufficient facts to plead a breach of contract claim to survive a motion to dismiss.

As to Plaintiff's second contract claim, she alleges a series of training classes on Defendant's corporate policies throughout the duration of her employment, from which a reasonable juror could find that Plaintiff reasonably relied on Defendant's manifestations of assent to be bound to the

written policies. (Id.) In this second claim, Plaintiff realleges the breach and damages of her first contract claim. Thus, Plaintiff alleges a breach of contract claim on an implied-in-fact theory which survives a motion to dismiss.

However, in support of its motion, Defendant argues that the corporate policies alleged by Plaintiff are contained in the Associate's Handbook and the Handbook contains an express provision stating that nothing therein creates a contract or terms of a contract. Defendant submits evidence of an "Acknowledgment" of receipt of Defendant's "Associate Handbook," signed by Plaintiff. (McGuire Decl. at 2 ¶ 2.) The Acknowledgment, signed by Plaintiff, expressly provides that, "The policies and benefits presented in this handbook are for your information and do not constitute terms or conditions of employment," and "This handbook is not a contract." (McGuire Decl. Ex. A.) Plaintiff has submitted no evidence to controvert Defendant's evidence in this regard.

In Vanderselt v. Pope, 155 Or. App. 334, 339 (1998), the court stated,

We are aware of no cases where a party has been held to have formed an implied contract in spite of the party's clear, explicit, contemporaneous declaration that it did not wish to form a contract on that subject. Formation of a contract requires the meeting of minds, which is measured by objective manifestations of intent by both parties to form the contract.

ROUSE v. WAL-MART STORES, INC.
Findings and Recommendation

Disclaimers in employee handbooks, personnel policies, and codes of conduct have been given effect by courts applying Oregon law.   See Mobley v. Manheim Servs. Corp., 133 Or. App 89, 93 (1995) (disclaimers in "Code of Conduct" booklet providing, "I understand that the Code of Conduct is a general guide and that the provisions of the Code of Conduct do not constitute an employment agreement (contract) or a guarantee of continued employment," and "company may terminate [its employees] at any time for any reason," preserved employer's right to terminate plaintiff); Lawson v. Umatilla County, 139 F.3d 690 693 (9th Cir. 1998) (disclaimer in County Personnel Policies providing, "Under no circumstances shall these policies be construed to act as any type of employment contract with any employee of the County of Umatilla," given effect and employee's at-will status retained).

The disclaimers included in the Acknowledgment signed by plaintiff are unambiguous.   In view of Defendant's extrinsic evidence, no contract was formed based on Defendant's corporate policies.   Plaintiff and Defendant freely bargained the terms of employment.   Plaintiff acknowledged that any terms of employment expressly excluded the written policies.   An implied-in-fact contract can only be found when the conduct expresses the parties' mutual assent to be bound by the contract.   Courts in Oregon restrict a

party's unilateral modification of contractual terms when that modification frustrates the other party's "objectively reasonable expectations." Hampton Tree Farms, Inc. v. Jewett, 320 Or. 599, 616 (1995). No reasonable juror could find an implied-in-fact contract in view of the signed Acknowledgment which unambiguously disclaims the formation of any contract. Moreover, any reliance of the Plaintiff on Defendant's written policies as forming a contract is manifestly unreasonable in view of the signed Acknowledgment.

Assuming, in the alternative, that Plaintiff seeks relief under a theory of promissory estoppel, an employer can be estopped from denying the existence of a contract where the employee reasonably and foreseeably relied on a promise to her detriment. Furrer v. Southwestern Or. Cmty. Coll., 196 Or. App. 374, 382 (2004). The elements of a claim of promissory estoppel include: "'(1) a promise, (2) which the promisor, as a reasonable person, could foresee would induce conduct of the kind which occurred, (3) actual reliance on the promise, (4) resulting in a substantial change in position.'" Id. (citing Bixler v. First Nat'l Bank of Or., 49 Or. App. 195, 199-200 (1980)).

Consequently, to recover under a theory of promissory estoppel, Plaintiff must show that she reasonably relied to her detriment on Defendant's representations. As discussed above, any reliance by Plaintiff on

Defendant's written policies to her detriment was manifestly unreasonable. Also, Plaintiff's allegations indicate that, throughout any alleged reliance on Defendant's policies, she remained working at a higher wage than she procured after leaving Defendant's employ.

Plaintiff offers no evidence which creates a genuine issue of fact for trial as to her contract claims and, on this record, the Court finds that Defendant is entitled to summary judgment as to Plaintiff's contract claims for breach of contract and for estoppel alleged in her complaint.

In her response, Plaintiff argues that her claims are better alleged as a violation of the covenant of good fair and fair dealing, with regard to Defendant's written corporate policy. She asserts that, "Defendant is obligated to exercise good faith and fair dealing in its employment contract with Plaintiff, as to all contractual policies and conditions, except termination." (Pl. Resp. at 2.)

In Oregon, "there is an obligation of good faith in the performance and enforcement of every contract." Best v. U. S. Nat'l Bank of Or., 303 Or. 557, 561 (1987) (citing Comini v. Union Oil Co. of Cal., 277 Or. 753, 756 (1977); Perkins v. Standard Oil Co., 235 Or. 7, 16 (1963)); Restatement (Second) of Contracts § 205 (1979)). The duty "serves to effectuate the objectively

reasonable expectations of the parties." Hampton Tree Farms, 320 Or. at 615 (and cases cited).

Plaintiff relies on the existence of a contract based on defendant's corporate policies in contending that she should be allowed to amend to set forth a claim for breach of the covenant of good faith and fair dealing. As found by the Court above, the disclaimer provisions contained in the Acknowledgment signed by Plaintiff precluded any contract formation between Plaintiff and Defendant based on Defendant's corporate policies. Accordingly, no claim for violation of the covenant of good faith and fair dealing can be stated, and Plaintiff's request to amend to allege such a claim should be denied.

Tort Claim:  Intentional Infliction of Emotional Distress

Defendant contends that, under Oregon law, Plaintiff fails to allege conduct by Defendant that constitutes extreme outrageous conduct. Plaintiff responds with a reiteration of conduct by Defendant and the district manager, which she indicates is socially intolerable conduct. Defendant replies that Plaintiff does not address its arguments. It contends that Plaintiff does not attempt to explain how or why the conduct which she reiterates in her response constitutes a transgression of socially tolerable conduct, and that

Plaintiff ignores Oregon law which holds that it is Defendant's acts, not its motives, that must be outrageous.

To recover on a claim for intentional infliction of emotional distress, Plaintiff must prove that:  (1) defendant intended to inflict severe emotional distress on plaintiff, or knew that such distress was certain, or substantially certain, to result from the conduct; (2) defendant's acts were the cause of plaintiff's severe emotional distress; and (3) defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. McGanty v. Staudenraus, 321 Or. 532, 544-51 (1995).

"Determining whether the alleged conduct is an extraordinary transgression of the bounds of socially tolerable conduct is initially a question of law." Delaney v. Clifton, 180 Or. App. 119, 129 (2002) (citing Harris v. Pameco Corp., 170 Or. App. 164, 171 (2000)). Whether conduct is an extraordinary transgression of the bounds of socially tolerable conduct is "a fact-specific inquiry, to be considered on a case-by-case basis, considering the totality of the circumstances." Rosenthal v. Erven, 172 Or. App. 20, 23 (2001).  The Oregon Court of Appeals has found that "[i]n considering whether the defendant's acts were an 'extraordinary transgression,' the court will examine the purpose of the conduct and the means used to achieve the

result.  Not only must the conduct be deliberate, the means of inflicting the harm must be extraordinary . . . ."  Shay v. Paulson, 131 Or. App. 270, 273 (1994) (citation omitted); Woods v. First Am. Title Ins. Co. of Or., Inc., 102 Or. App. 343, 348, on reconsideration, 104 Or. App. 100 (1990).  A plaintiff cannot recover for "the kind of temporary annoyance or injured feelings that can result from friction and rudeness among people in day-to-day life.  The conduct must be 'so offensive as to be outrageous,' 'outrageous in the extreme.'" Shay, 131 Or. at 273 (citation omitted).  "The conduct must be 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Montgomery v. J.R. Simplot Co., 916 F. Supp. 1033, 1041 (D. Or. 1994), aff'd, 76 F.3d 387 (9th Cir. 1996) (quoting Christofferson v. Church of Scientology of Portland, 57 Or. App. 203, 211 (1982)).  The balance may tip in favor of a finding of outrageous conduct where there is an abuse of position that gives a person power to affect the interests of another, such as arises between an employer and employee.  See MacCrone v. Edwards Ctr., Inc., 160 Or. App. 91 (1999), vacated, 332 Or. 41 (2001), reinstated, 176 Or. App. 355 (2001).

In her amended complaint, Plaintiff alleges the following facts in her claim:  Defendant acted by and through the district manager, and without Plaintiff's knowledge, to transfer Robert Rouse and Claudia Abbott out of state in retaliation for reporting the fraternization and appealing Claudia Abbott's prospective placement; Defendant paid transfer expenses; Defendant's regional office denied the district manager's involvement in the transfer; on Plaintiff's further complaint, Defendant's home office promised to reprimand the district manager if she proved to be instrumental in the transfer; and Plaintiff established the district manager's involvement and Defendant did not follow through with a reprimand.   In her response to Defendant's motion, Plaintiff relies on the following facts to show that Defendant's conduct was socially intolerable in the extreme:

> Defendant required employees to report any actual or reasonably suspected violation of policy.  Plaintiff reported the placing of Claudia [Abbott] in the Medford store as a violation of corporate policy.  Pam [Casey], the district manager, disagreed with this, but Defendant's corporate office overturned her decision.  In response, Pam retaliated against Plaintiff, and at Pam's (not Mr. Rouse's) suggestion, had Mr. Rouse and Claudia transferred to the Sacramento area, away from his family.  Plaintiff did not know where her husband was, and Defendant would not tell her.  Defendant pretended to work with Plaintiff, through its open door policy, but it also lied about Pam's role in the transfer.  Plaintiff wound up filing  bankruptcy.

(Pl. Resp. at 3.)  She also argues that Defendant intolerably intruded into

Plaintiff's personal life through Pam Casey, whose actions constituted retaliation and harassment which are prohibited by Defendant's corporate policies, and that Defendant's policies also prohibit actions aimed at an employee's marital status.

Plaintiff's claim is based almost entirely on Defendant's alleged acquiescence in, and failure to reprimand for, a transfer of Mr. Rouse motivated at least in part by a district manager's alleged desire to retaliate. While intentional infliction of emotional distress claims are common in the context of employment disputes, Oregon appellate courts have been very hesitant to impose liability for such claims in employment settings, even in the face of serious employer misconduct.  Cf. Madani v. Kendall Ford, Inc., 312 Or. 198, 203-06 (1991), abrogated on another ground by McGanty v. Staudenraus, 321 Or. 532 (1995) (terminating employee for refusing to pull down his pants insufficient to state claim); Patton v. J.C. Penney Co., 301 Or. 117, 123-24 (1986), abrogated on another ground by McGanty v. Staudenraus, 321 Or. 532 (1995) (terminating employee because he refused to stop dating co-worker insufficient to state claim); Watte v. Edgar Maeyens, Jr., M.D., P.C., 112 Or. App. 234, 237 (1992) (employer threw a tantrum, screamed and yelled at his employees, accused them of being liars and

saboteurs, then fired them all, found insufficient to state claim);  Snyder v. Sunshine Dairy, 87 Or. App. 215, 218 (1987) (inconsistent and excessive supervision, unjustified reprimands, threats of termination, requiring the employee to perform menial tasks insufficient to state claim); see also Wells v. Thomas, 569 F. Supp. 426, 433 (E.D. Pa. 1983) (placing plaintiff in newly created position without responsibilities, taking away her private office, reassigning her secretary, allowing her phone calls to go unanswered, giving her poor performance evaluations for the first time in twenty-five years, and terminating her, found insufficient to state claim); Beidler v. W. R. Grace, Inc., 461 F. Supp. 1013 (E.D. Pa. 1978), aff'd, 609 F.2d 500 (3d Cir. 1979) (plaintiff excluded from meetings necessary to perform his job, found papers constantly rearranged on his desk to annoy him, informed he would be given a new assistant without consultation, learned from rumors that his job was in jeopardy, and evaded by his superior who intimated that the new assistant would be replacing him, insufficient to state claim); Lewis v. Or. Beauty Supply Co., 302 Or. 616 (1987).

Some intentional infliction of emotional distress claims have been successfully stated against employers when they were based upon conduct amounting to illegal sexual and racial discrimination.  Racial and ethnic slurs,

ROUSE v. WAL-MART STORES, INC.
Findings and Recommendation

as well as language used to sexually harass, are socially intolerable, and if prolonged and repeated, may support an intentional infliction of emotional distress claim.  Whelan v. Albertsons, Inc., 129 Or. App. 501, 504 (1994) (repeated taunts of "queer" and "Serge," an effeminate character, in front of customers and co-workers in light of plaintiff's work found sufficient to state claim); Lathrope-Olson v. Or. Dep't of Transp., 128 Or. App. 405, 407 (1994) (offensive language used to sexually harass sufficient to state claim); Palmer v. Bi-Mart Co., 92 Or. App. 470 (1988) (six month course of harassment, both verbally and through notes, including sexually explicit wording, sufficient to state claim).

The Court finds that allegations that an employer transferred an employee's estranged husband and his girlfriend, and perhaps acted as less than a model employer, do not constitute an extraordinary transgression of the bounds of socially tolerable conduct under Oregon law.  Moreover, it is an employer's acts which must be outrageous; an employer's motive is irrelevant.  "An employer's motive for the act is not relevant to whether the act extraordinarily transgressed the bounds of socially tolerable conduct; the act itself must be intolerable."  Madani, 312 Or. at 204; Scott v. Sears, Roebuck & Co., 395 F. Supp.2d 961, 981 (D. Or. 2005); Logan v. W.

Coast Benson Hotel, 981 F. Supp. 1301, 1322 (1997).

The Court finds that the alleged conduct of Defendant falls short of the conduct found by Oregon courts to state a successful intentional infliction of emotional distress claim.  Defendant's motion to dismiss for failure to state a claim should be granted.

Tort Claim:  Invasion of Privacy

Defendant contends that Plaintiff fails to state a claim for invasion of privacy under Oregon law because it did not intrude upon her solitude, seclusion, private affairs or concerns; Plaintiff consented to any involvement in her affairs; and its conduct was not highly offensive.  Plaintiff responds that Defendant intolerably intruded into her personal life  by the retaliation and harassment of Pam, which are prohibited by Defendant's corporate policies, and those policies also prohibit actions aimed at an employee's marital status. Defendant replies that Plaintiff does not address its arguments.

To recover for invasion of privacy by intrusion upon the seclusion of others, Plaintiff must show "'(1) an intentional intrusion, physical or otherwise; (2) upon plaintiff's "private affairs or concerns"; and (3) that the intrusion would be offensive to a reasonable person.'"  Leggett v. First Interstate Bank of Or., N.A., 86 Or. App. 523, 527 (1987) (quoting Oliver v.

Pac. Northwest Bell Tel. Co., 53 Or. App. 604, 607 (1981)); see Trout v.

Umatilla County Sch. Dist. UH3-Milton-Freewater, 77 Or. App. 95, 99-100

(1985); Mauri v. Smith, 324 Or. 476, 482-83 (1996) (citing Restatement

(Second) of Torts § 652B (1977)).

> A person intrudes by thrusting himself or herself in without invitation, permission, or welcome. A person acts intentionally when he or she either desires to cause the consequence of an act or believes that the consequence is substantially certain to result from the act. By definition, then, an actor commits an intentional intrusion if the actor either desires to cause an unauthorized intrusion or believes that an unauthorized intrusion is substantially certain to result from committing the invasive act in question.

Mauri, 324 Or. at 484. The Mauri court referred to the comments to the

Restatement (Second) of Torts § 652B (1977) (Restatement) in discussing the

claim for intrusion upon seclusion. Comment b of the Restatement § 652B

indicates that "private affairs or concerns" means intrusions on private affairs

or concerns tantamount to observing and reconnoitering. And, according to

the Restatement § 652B comments c and d, no invasion occurs when one

makes an observation publicly available, and an invasion may result from a

persistent occurrence of an everyday event, i.e., making a telephone call in

collection of a debt, when of a "persistence and frequency as to amount to

a course of hounding the plaintiff, that becomes a substantial burden to his

existence."

The Court finds that Plaintiff fails to allege sufficient facts that Defendant intentionally intruded into her private affairs or concerns.  In contrast to Defendant intruding into her affairs, Plaintiff alleges that she sought out Defendant's involvement, and that Defendant assured her that a proper reprimand would follow a showing of the district manager's involvement in initiating Mr. Rouse's and Ms. Abbott's transfers.  Plaintiff fails to allege an intrusion into her affairs when it appears that Defendant merely undertook action of the type that occurs in the ordinary course of business and without persistence tantamount to "a substantial burden to [Plaintiff's] existence."  Accordingly, Defendant's motion to dismiss should be granted and Plaintiff's claim for invasion of privacy should be dismissed.

Plaintiff's request to amend

As discussed above,  Plaintiff's request to amend to allege a claim for violation of the breach of the contractual duty of good faith and fair dealing should be denied.  As to Plaintiff's tort claims, which the Court recommends be dismissed, Plaintiff offers no facts in her response which could be alleged which would be sufficient to state a claim for relief as to her claim of intentional infliction of emotional distress or her claim of invasion of privacy.

For these reasons, Plaintiff's claims should be dismissed without leave to amend.

## IV.  RECOMMENDATION

Based on the foregoing, it is recommended that Defendant's motion to dismiss, converted in part to one for summary judgment as to Plaintiff's contract claims (#14), be granted, and that Plaintiff's request for leave to amend be denied.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  **Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.** The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court.  Thereafter, the parties have ten days within which to file a response to the objections.  **Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the**

ROUSE v. WAL-MART STORES, INC.
Findings and Recommendation                                    Page 27 of 27

**findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.**

DATED this ___6____ day of July, 2006.


_____/s/_____
UNITED STATES MAGISTRATE JUDGE